UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| JOAN JEPSON and JOHN JEPSON, ) ) Plaintiffs, ) ) v. ) ) HSBC BANK USA, NATIONAL ) ASSOCIATION, as trustee for ) MERRILL LYNCH ALTERNATIVE ) NOTE ASSET TRUST SERIES 2007-AF1, ) ) Defendant. ) | | Civil No. 12-12179-LTS |

ORDER ON DEFENDANT'S MOTION TO DISMISS

February 20, 2013

SOROKIN, C.M.J.

Defendant HSBC Bank USA, National Association ("HSBC"), as trustee for Merrill Lynch Alternative Note Asset Trust Series 2007-AF1 ("the Trust"), seeks dismissal of the Complaint filed against it by the plaintiffs, Joan and John Jepson.  For the reasons that follow, the motion (docket # 4) is ALLOWED.

I.     BACKGROUND

The following facts are drawn from the Complaint and the documents attached thereto.[1]  See Doc. No. 1-1.  In November 2006, the Jepsons refinanced the mortgage on their home in

---

[1] On a motion to dismiss, the Court may consider documents "expressly incorporated" into the complaint, as well as those "relie[d] upon [in the complaint and] whose authenticity is not challenged."  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  The Jepsons have not objected to HSBC's submission of a copy of the notice of foreclosure published in The Plymouth Sentinel, Doc. No. 5-4.  See generally Doc. No. 7.  All other exhibits offered by the parties are publicly filed pleadings, court decisions, or documents that were appended to the Complaint.

Marion, Massachusetts. Doc. No. 1-1 at ¶¶ 1, 4. In doing so, they signed a Note in the amount of $516,000, payable to Mortgage Lenders Network USA, Inc. ("MLN"). Id. at ¶ 4 & Ex. B. The Note was secured by a concurrently executed Mortgage naming MLN as the lender. Id. at ¶ 4 & Ex. A, pp.1-2. The Mortgage identified Mortgage Electronic Registration Systems, Inc. ("MERS") as "the mortgagee," and also defined MERS as "a separate corporation that is acting solely as a nominee for [MLN] and [MLN's] successors and assigns." Id. at Ex. A, p.1.[2] Pursuant to the terms of the Mortgage, the Jepsons "mortgage[d], grant[ed] and convey[ed]" rights in their home "to MERS (solely as nominee for [MLN] and [MLN's] successors and assigns) and to the successors and assigns of MERS, with power of sale." Id. at Ex. A, p.3.

MERS, "as nominee for [MLN], its successors and assigns," assigned the Jepsons' Mortgage to HSBC, as trustee for the Trust, on April 4, 2011.[3] Id. at Ex. C. Documents governing the Trust contain terms limiting when, and by whom, mortgages were to be conveyed into the Trust. Id. at ¶¶ 14-17. The Assignment, on its face, appears not to comply with those limitations. Compare id. (requiring assignment on or before May 30, 2007, via depositor Merrill Lynch Mortgage Investors, Inc.), with id. at Ex. C (assigning mortgage on April 4, 2011 from

---

[2] MERS is a company whose purpose "is to be the mortgagee of record and nominee for the beneficial owner of the mortgage loan." Butler v. Deutsche Bank Trust Co. Ams., 2012 WL 3518560, at *2 (D. Mass. Aug. 14, 2012) (quoting a MERS Case Law Outline, a copy of which was included on the data CD filed with the Jepsons' complaint in this action). Through its "national electronic registry system," MERS "tracks the changes in servicing rights and beneficial ownership interests in mortgage loans that are registered on the registry." Id. "Registering the mortgage loan information" with MERS "is separate and apart from the function that county recorders perform." Id.

[3] Contrary to the Jepsons' allegations, the Assignment references only the Mortgage, and does not mention the Note. Compare Doc. No. 1-1 at ¶ 13 (alleging the Assignment purported to transfer the Mortgage "together with the note or notes therein described or referred to"), with id. at Ex. C (containing no such language).

MERS/MLN directly to the Trust). Nonetheless, the Assignment was executed before a notary public in Minnesota by an individual identified as MERS's "Assistant Secretary," and was recorded with the Plymouth County Registry of Deeds  Id.

At some point, the Jepsons apparently fell behind on their mortgage payments. On May 5, 2012, HSBC published a notice of foreclosure sale in a Plymouth newspaper. Doc. No. 5-4. The notice identified HSBC, as trustee for the Trust, as the "present holder" of the Jepsons' mortgage, and stated the home would be sold on May 25, 2012. Id. The scheduled sale was postponed, however, and still has not occurred. Doc. No. 5 at 3.

The Jepsons sued HSBC in November 2012 in the Plymouth County Superior Court for the Commonwealth of Massachusetts, seeking an injunction against the foreclosure sale and a declaration that HSBC does not hold their mortgage and cannot foreclose, and also alleging a claim for slander of title. Doc. No. 1-1. HSBC promptly removed the action to this Court, Doc. No. 1, and thereafter moved to dismiss the complaint in its entirety, Doc. Nos. 4-5. The Jepsons opposed the motion,[4] Doc. No. 7, and HSBC replied, Doc. No. 11. The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. No. 8.

II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must take the allegations in the

---

[4]The Jepsons' brief does not request leave to amend the Complaint in the event the defendants' motion is granted in whole or in part. See generally Doc. No. 7.

complaint as true and must make all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc., 2013 WL 500868, at *4 (1st Cir. Feb. 12, 2013) (slip op.) (internal quotations omitted). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Id. at 679; accord Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Although HSBC's motion cites only Rule 12(b)(6), Doc. No. 4; Doc. No. 5 at 3-4, it seeks dismissal, in part, based on an argument that the Jepsons lack standing to challenge the

assignment of their mortgage, Doc. No. 5 at 6-11.  Such a motion is properly based on Rule 12(b)(1).  See Edelkind v. Fairmont Funding, Ltd., 539 F. Supp. 2d 449, 453 (D. Mass. 2007) ("A motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim."); see also Libertad v. Welch, 53 F.3d 428, 436 (1st Cir. 1995) ("[S]tanding is a threshold issue, determining whether the court has the power to hear the case . . . .").  To show standing, a plaintiff must show that she suffered an "injury in fact," a causal connection between the injury and complained of conduct, and that it is likely that the injury will be redressed by a favorable decision from the court.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Furthermore, the standing doctrine "ordinarily require[s] a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party)."  Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006).

III.     DISCUSSION

Each of the Jepsons' three claims depends on the alleged invalidity of the assignment of their mortgage to HSBC.  Counts I and II seek a permanent injunction preventing HSBC from proceeding with a foreclosure sale, and a declaration that HSBC lacks the authority to foreclose, because the assignment was invalid.  Doc. No. 1-1 at ¶¶ 115-41.  Count III alleges HSBC slandered the title to the Jepsons' home when it publicly claimed to hold the Jepsons' mortgage (both by registering the assignment and by giving notice of the scheduled foreclosure sale).  Id. at ¶¶ 142-51.  Thus, the Jepsons' claims can proceed only if the Jepsons have standing to challenge the assignment and have identified an actionable legal theory undermining it.

In addition to arguing they have standing, the Jepsons have offered several theories in support of their challenge to the assignment.  First, they raise issues related to the involvement of

MERS, arguing that MERS never held the mortgage and was not authorized to make the assignment, and that the individual who signed the assignment on behalf of MERS lacked the authority to do so.  Next, they claim the assignment violated the terms of the documents governing the Trust (i.e., the Pooling and Servicing Agreement, or "PSA"), and they assert that HSBC has not established a valid chain of title.  Finally, they suggest a recent decision of the Massachusetts Supreme Judicial Court requires HSBC to possess the note, along with the mortgage, before foreclosing.  None of these theories are persuasive.

    A.    Standing

HSBC broadly asserts that borrowers lack "standing to challenge . . . foreclosure sale[s] by challenging the propriety of . . . mortgage assignment[s]."  Doc. No. 5 at 6-7.  The Jepsons characterize this argument as "legally absurd," e.g., Doc. No. 7 at 6, suggesting they have standing to allege defects in HSBC's claimed title, and noting their complaint explicitly disavows any attempts to attack contracts to which they are not a party, id. at 14-15.

Until very recently, there was a split of authority among trial courts in this District as to whether a mortgagor may "challenge a foreclosure sale as void due to an allegedly invalid assignment."  Butler, 2012 WL 3518560, at *6 (collecting cases on both sides of the split); see Culhane v. Aurora Loan Servs. of Neb., 2013 WL 563374, at *3 (1st Cir. Feb. 15, 2013) (slip op.) (citing three examples).  The First Circuit has now resolved the split, holding that "a nonparty mortgagor . . . has standing to raise certain challenges to the assignment of her mortgage."  Culhane, 2013 WL 563374, at *3; cf. Juarez, 2013 WL 500868, at *5.[5]  That holding

---

[5]In Juarez, the First Circuit concluded a homeowner could challenge a foreclosure based on allegations that the assignment of her mortgage had occurred after the foreclosure. 2013 WL 500868, at *5 ("It is, therefore, not a question of the validity of the assignment . . . but a question

was "narrow," permitting challenges only to "invalid, ineffective, or void" assignments. Culhane, 2013 WL 563374, at *5 (citing as examples assertions that "the assignor had nothing to assign or had no authority to make an assignment to a particular assignee").

However, as federal and state courts have almost uniformly concluded, and as the First Circuit has now affirmed, "a mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Id.; accord Butler, 2012 WL 3518560, at *7 (mortgagor has standing to challenge foreclosures based on void assignments, but not "on the basis of just any potentially invalidating deficiency in an assignment"); Doc. No. 7-3 at 14-15, Abate v. Freemont Inv. & Loan, No. 12 MISC 464855 (Mass. Land Ct. Dec. 10, 2012) (allowing challenges to void and voided assignments, but not to voidable assignments where the borrower is not "a party entitled to void" them); see also Doc. No. 5-5 at 11, US Bank Nat'l Assoc. v. Orla, No. 10H84SP004564 (Bos. Housing Ct. June 7, 2012) (ruling borrower "has no standing to directly or collaterally challenge the validity of [an] assignment . . . even if that assignment into the trust may have been made in contravention of the terms of the PSA").

Although the Jepsons' assertions related to MERS and its role in the assignment of their mortgage might be construed as claims that the assignment was void, those assertions cannot save the Jepsons' complaint from dismissal. See § III.B, infra. The rest of the Jepsons' challenges stem from alleged deficiencies that would render the assignment to HSBC voidable, rather than void. See, e.g., Doc. No. 1-1 at ¶ 136 (alleging the assignment did not comply with the terms of the PSA). Neither the First Circuit's decision in Culhane nor the Land Court

---

of the timing of the assignment in relation to the initiation of the foreclosure proceedings.").

decision the Jepsons cite in support of their claim of standing permits them to pursue such challenges. See Abate, Doc. No. 7-3 at 19 (finding "a claim that the Assignment may be voided because it violated the terms of the Trust" could not be pursued by a borrower who was not a party "to the agreements setting the terms of the Trust"); see also § III.C, infra.

B.  MERS Issues

The Jepsons' claims for injunctive and declaratory relief rely, in part, on two challenges to the role MERS played in the assignment of their mortgage. They first argue MERS lacks the power to assign mortgages under Massachusetts law. However, the Jepsons have cited no case law in support of this assertion. See Doc. No. 7 at 7-9. Instead, they suggest that the MERS "business model has never been adjudicated on its merits," Doc. No. 7 at 7 (emphasis omitted), and that the validity of assignments by MERS "has never been subject to [o]pposition plausibly alleging [the MERS] business model fail[s] to comply with the specific context of Massachusetts law," id. at 8.[6] These challenges are meritless.

"[A] number of decisions in this district hold that MERS has the power to assign a mortgage." Butler, 2012 WL 3518560, at *7 (collecting cases). And, as Judge Woodlock explained in his well-reasoned decision, nothing about MERS's nominee designation, its

---

[6] The Jepsons make similar arguments in support of their claims generally, suggesting the "financial bar" has secured strings of victories in various courts by advancing "legally absurd" theories in the face of little or no opposition by pro se or poorly represented borrowers. See, e.g., Doc. No. 7 at 1-2. These assertions are unsupported in the Jepsons' brief. Further, they are undermined by cases like: Eaton v. Fed. Nat'l Mortg. Assoc., 969 N.E.2d 1118 (Mass. 2012), in which the Jepsons concede the borrower had "competent legal representation . . . [from] Harvard Law," Doc. No. 7 at 1 n.1, and which involved an assignment by MERS; Butler, in which Judge Woodlock rejected nearly identical challenges to a MERS assignment of a mortgage to a business trustee, and where the challenges were brought by the same counsel now representing the Jepsons; and the First Circuit's decision in Culhane.

business model, or the process by which it tracks transfers of mortgage notes is inconsistent with Massachusetts law. Id. at *8 (rejecting the same arguments raised here, and discussing relevant state statutes and court decisions). In fact, as one session of this Court has observed, "[i]t is as if by clever design that the MERS system fits perfectly into the Massachusetts model for the separation of legal and beneficial ownership of mortgages." Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352, 371 (D. Mass. 2011), aff'd, 2013 WL 563374 (1st Cir. Feb. 15, 2013). Recently, the First Circuit affirmed this observation, concluding "that the MERS framework is faithful to the age-old tenets of mortgage law in Massachusetts." Culhane, 2013 WL 563374, at *1. Moreover, MERS was identified as the mortgagee here, Doc. No. 1-1 at Ex. A, p.1, and, despite the Jepsons' claim to the contrary, in signing the mortgage they explicitly granted MERS the power of sale, id. at p.3. As such, their first challenge based on MERS's involvement fails. See Culhane, 2013 WL 563374, at *7 (finding "MERS had the authority twice over to assign the mortgage," citing both its "status as an equitable trustee" and as the mortgagee under "the terms of the mortgage contract").

The second problem the Jepsons allege with respect to MERS's assignment of their mortgage relates to the individual who executed the assignment on behalf of MERS. According to the Jepsons, that individual was employed by Wells Fargo, and was not authorized to make assignments on behalf of MERS. Doc. No. 1-1 at ¶ 27. This argument, too, has been presented to, and soundly rejected by, both the First Circuit and trial courts in this district. See Culhane, 2013 WL 563374, at *8; Butler, 2012 WL 3518560, at *9; see also Rosa v. Mortg. Elec. Sys., Inc., 821 F. Supp. 2d 423, 430 (D. Mass. 2011). The assignment was signed by "a person purporting to hold [the] position [of] . . . assistant secretary" of MERS, and it was "executed

9

before a notary public." Rosa, 821 F. Supp. 2d at 430; see Doc. No. 1-1 at Ex. C. It is, therefore, valid and binding under Massachusetts law. Culhane, 2013 WL 563374, at *8 Butler, 2012 WL 3518560, at *9 (citing Mass. Gen. Laws ch. 183, § 54B); Rosa, 821 F. Supp. 2d at 430 (same).

Accordingly, the Jepsons have identified no plausible basis upon which their challenges to MERS – either generally or under the specific circumstances of their mortgage – could be sustained and would warrant the injunctive and declaratory relief they seek in their complaint.

C. Trust Document and Title Issues

The Jepsons' remaining allegations in support of Counts I and II relate to the terms of the Trust's PSA and HSBC's alleged failure to establish a proper chain of title. As explained above, both state and federal courts in Massachusetts have uniformly held that mortgagors may not attack an assignment based on alleged failures to comply with PSAs, which are contracts to which the borrowers are not a party. See § III.A, supra. As such, the Jepsons lack standing to complain about the assignment occurring after the Trust's "closing date," and the transfer of the mortgage directly into the Trust rather than through a depositor.[7] Any failure to comply with the PSA would, at most, render the assignment voidable by a party to that contract, and the Jepsons have not alleged any such party has avoided the assignment at issue here.

The Jespons' averments regarding HSBC's alleged failure to establish a complete chain of title are likewise unavailing. As an initial matter, HSBC is under no obligation to offer such proof or "provide[] any evidentiary foundation, under proper evidentiary rules" to show it holds

---

[7]Although the complaint contains allegations in which the Jepsons claim they are not seeking to enforce the PSA, e.g., Doc. No. 1-1 at ¶ 109, such allegations are legal conclusions and the Court need not accept them. Moreover, there is no other way to characterize their efforts to invoke the terms of the Trust's governing documents.

the mortgage.  Doc. No. 1-1 at ¶ 112.  "Massachusetts does not require a mortgage holder to obtain judicial authorization to foreclose on a mortgaged property," U.S. Bank Nat'l Assoc. v. Ibanez, 941, N.E.2d 40, 49 (Mass. 2011), and the Jepsons may not circumvent state law and impose such a requirement by initiating judicial proceedings on their own.  Unlike the purported mortgagee in Ibanez, where the bank itself instituted an action seeking to clear title after foreclosing and, thus, "bore the burden of establishing their entitlement to the relief sought," id., HSBC is the defendant here and bears no such burden.

In any event, the exhibits appended to the complaint establish a complete chain of title. The mortgage names MERS as mortgagee and grants MERS and its "successors and assigns" the power of sale.  Doc. No. 1-1 at Ex. A, pp. 1, 3.  MERS assigned the mortgage directly to HSBC, id. at Ex. C, in a manner that appears to have complied with all relevant state laws.  See § III.B, supra.  No further proof is needed to establish the chain of title.  See Ibanez, 941 N.E.2d at 53 (requiring "proof that the assignment was made by a party that itself held the mortgage," and stating a foreclosing entity could establish title via "a single assignment from the record holder of the mortgage").  To the extent the Jepsons suggest that the chain of title is incomplete because it does not reflect transfers of the note from MLN to a string of other MERS members, "[t]racking a transfer within the MERS System does not constitute a transfer of a mortgage under Massachusetts law."  Butler, 2012 WL 3518560, at *8 (contrasting transfers of notes within the MERS System with written and recorded assignments of the mortgage made by MERS).

Because none of the Jepsons' challenges to MERS, the PSA, or the chain of title can

support a claim to declaratory or injunctive relief, Counts I and II are dismissed.[8]

    D.    Slander of Title

The Jepsons' third claim – slander of title – fails based on the discussion set forth in the preceding two sections. A "party asserting a claim for slander of title must show that the statements made were false or that the publisher of the statement acted in reckless disregard of the truth in publishing the statement." Rosa, 821 F. Supp. 2d at 434. The Court's conclusion that MERS's assignment of the Jepsons' mortgage to HSBC was valid means that the statements about which the Jepsons complain were true. Neither the recording of the valid assignment nor the publication of a notice of foreclosure sale accurately identifying HSBC as the holder of the mortgage at that time could constitute slander. Accordingly, Count III fails to state a claim.

IV.    CONCLUSION

For the foregoing reasons, HSBC's Motion to Dismiss the Complaint (docket # 4) is ALLOWED, and the Jepsons' complaint is DISMISSED.

                                                    SO ORDERED.

                                                /s / Leo T. Sorokin
                                                Leo T. Sorokin
                                                Chief United States Magistrate Judge

---

[8] In connection with Counts I and II, the Jepsons also argue that the recent Supreme Judicial Court ("SJC") decision in Eaton requires HSBC to hold both the note and the mortgage in order to foreclose. The SJC expressly limited its holding in Eaton "to apply only to mortgage foreclosure sales for which the mandatory notice of sale has been given after [June 22, 2012]." 969 N.E.2d at 1133; accord Juarez, 2013 WL 500868, at *5 n.6. Here, HSBC gave notice in May 2012. Given the date of the notice and the Court's conclusion that HSBC held the mortgage as of that date pursuant to a valid assignment from MERS, the holding in Eaton was inapplicable at the time of the notice. The Court need not consider what effect Eaton would have on any efforts by HSBC to proceed with foreclosure after the dismissal of this action.